# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY MARVIN BISHOP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF OKLAHOMA, ex rel. )<br>DEPARTMENT OF HUMAN )<br>SERVICES, et al., )<br>)<br>Defendants. ) | Case No. CIV-13-171-D |

## ORDER

Timothy Marvin Bishop (Bishop) brings this action against the Oklahoma Department of Human Services (OKDHS) and several OKDHS workers for abuse he suffered at the hands of Marc Lewis, the foster parent selected for him by OKDHS. Bishop alleges that Defendant Robyn Singleton Szuba (Szuba) failed to adequately investigate prior allegations of sexual abuse by Lewis. Bishop's claims arise under 42 U.S.C. § 1983, the Oklahoma Constitution, and the common law. Before the Court is Defendant Szuba's Motion for Summary Judgment [Doc. No. 141]. She contends that (1) she is entitled to judgment as a matter of law on Bishop's constitutional claims and (2) she is entitled to qualified immunity in her individual

capacity. Bishop has filed his response in opposition [Doc. No. 148], to which Szuba has replied [Doc. No. 153].[1] The matter is fully briefed and at issue.

## BACKGROUND

Unless otherwise stated, the following material facts are undisputed, and, along with all reasonable inferences, are viewed in the light most favorable to Bishop. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017). OKDHS was created for the purpose of "administering and carrying into execution" all laws enacted by the Oklahoma Legislature pursuant to § 1 of Article XXV of the Oklahoma Constitution. OKDHS is also required to "perform such other duties as may from time to time be prescribed by law." At the time of the events alleged in this case, these "other duties" included the duties to investigate reports of suspected child abuse and neglect, and to place children in foster care under certain circumstances. From 1995 to August 1999, Szuba was employed by OKDHS as a child welfare social worker.

In 1997, Bishop (then known as Antonio Combs) was placed in the custody of OKDHS when he was seven years old. In March 1999, DHS received a referral that stated children in a foster home operated by Marc Lewis were being exposed to sexually explicit photos, deprived of food, staying out late, sleeping in pool halls,

---

[1] Bishop was permitted to file a Surreply [Doc. No. 158], and on October 10, 2016, Szuba filed a Notice of Supplemental Authority in support of her Motion [Doc. No. 160].

and being verbally abused when they lost pool games. Another referral alleged photographs were found of Lewis having sex with children. Szuba determined that the allegations of abuse were unsubstantiated ("ruled out"). In August 1999, OKDHS placed Bishop in Lewis' home. At the time Bishop was placed with Lewis, Szuba was no longer employed by OKDHS. Bishop was sexually molested by Lewis between August 1999 and January 2000, when he was eventually removed by OKDHS. An investigation by OKDHS of Lewis led to him being convicted of several counts of first-degree rape, forcible oral sodomy, and indecent or lewd acts with a child under sixteen. He was sentenced to four life sentences plus 390 years, to be served consecutively.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). The movant may make such a showing through the pleadings, depositions, other discovery materials, and affidavits. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1142 (10th Cir. 2013). At the summary judgment stage, the Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the

nonmoving party. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

Although the nonmoving party is entitled to all reasonable inferences from the record, the nonmovant must still identify sufficient evidence requiring submission to the jury in order to survive summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue. *Water Pik*, 726 F.3d at 1143-44. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

## DISCUSSION[2]

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. In this regard, § 1983 creates a private right of

---

[2] Defendant Kristen Kyle-Moon also filed a Motion for Summary Judgment [Doc. No. 140] that raised the same grounds Szuba asserts in her Motion. The Court denied Kyle-Moon's motion on May 8, 2017 [Doc. No. 164]. The legal doctrines discussed in Kyle-Moon's motion are equally applicable here.

4

action against any person who, under color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution and laws. *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122-23 (10th Cir. 2009). To establish a claim for individual liability under § 1983, a plaintiff must show the defendant personally participated in the alleged constitutional violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997).

"Generally, state actors are only liable for their own acts, not for acts of private violence." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). However, there are two exceptions to this general principle: (1) the "special relationship" doctrine and (2) the "state-created danger" theory. *Id*. (citing *Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 1996)). "The special relationship doctrine applies 'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.'" *Schwartz*, 702 F.3d at 579 (citing *J.W. v. Utah*, 647 F.3d 1006, 1011 (10th Cir. 2011)).[3] "Broadly, the state-created danger theory applies when the State creates or increases a harm of private violence to an individual." *Id*. at 579-80 (citing *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*,

---

[3] "In the Tenth Circuit, the classic examples are prisoners, individuals committed against their will to mental institutions, and individuals in state run foster care." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000) (citing *Maldonado v. Josey*, 975 F.2d 727, 732–33 (10th Cir. 1992)); *see also Yvonne L. ex rel. Lewis v. N.M. Dep't of Human Services*, 959 F.2d 883 (10th Cir. 1992).

159 F.3d 1253, 1262-63 (10th Cir. 1998)). Only the special relationship doctrine is relevant to this case.

"The special relationship triggers a continuing duty which is subsequently violated if a state official 'knew of the asserted danger to [a foster child] or failed to exercise professional judgment with respect thereto, ... and if an affirmative link to the injuries [the child] suffered can be shown.'" *Schwartz*, 702 F.3d at 580 (citing *Yvonne L. ex rel. Lewis v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 890 (10th Cir. 1992) (paraphrasing in original)). To this end, the Tenth Circuit has stated:

> Whether the state official failed to exercise professional judgment requires more than mere negligence; the official must have abdicated her professional duty sufficient to shock the conscience. Conduct is shocking to the conscience when the degree of outrageousness and magnitude of potential or actual harm is truly conscience shocking. Conscience-shocking behavior evades precise definition and evolves over time.

*Id.* at 585-86 (internal citations and paraphrasing omitted); *see also Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466, 2472, 192 L.Ed.2d 416 (2015) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (emphasis in original)).

Thus, the Court considers three guiding principles when evaluating a substantive due process claim: "(1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to

6

local policymaking bodies in making decisions impacting upon public safety." *Schwartz,* 702 F.3d at 586 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). Szuba concedes that OKDHS had a special relationship with Bishop, but argues her conduct, at most, was tantamount to mere negligence and did not violate Bishop's substantive rights under the Fourteenth Amendment.

The Court finds there are disputed questions of fact as to whether Szuba failed to exercise her professional judgment in investigating allegations of abuse and neglect by Lewis. Viewing the evidence in the light most favorable to Bishop, including all reasonable inferences, the record would reasonably support a finding that Szuba failed to properly investigate referrals despite evidence of Lewis' sexual, verbal, and physical abuse of children in his care. The record indicates that prior to Bishop's placement in Lewis' home, there were photos of Lewis in sexual situations with minor children, as well as evidence of other abuse. Viewing Bishop's evidence in total, Szuba's conduct could be construed as "conscience shocking" in that she failed to investigate Lewis' sexual abuse of children and ignored the obvious danger of placing children in Lewis' home. Had Szuba properly investigated these claims, Bishop would not have been placed in Lewis' home. According to Bishop's expert, Szuba's failure to fully investigate Lewis was an abandonment of professional judgment. Accordingly, whether Szuba exercised professional judgment in concluding that the allegations of abuse and neglect were unsubstantiated is a

7

disputed question of material fact and is inappropriate for resolution on summary judgment.

Next, Szuba contends that even if she is not entitled to summary judgment on Bishop's § 1983 claim, she is entitled to qualified immunity. Qualified immunity protects governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Court must undergo a two-step process to determine whether qualified immunity protection will be available to a defendant. The first step is to evaluate whether a constitutional right has been violated. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The second step is whether the right was clearly established at the time of the conduct at issue. *Id*. "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Id*. (citing *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)). In sum, "if the law did not put the [defendant] on notice that [her] conduct would be clearly unlawful, summary

judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding qualified immunity protects all but the plainly incompetent or those who knowingly violate the law)).

The constitutional right implicated is the fundamental right of physical safety that was violated by the physical and emotional abuse at the hands of Lewis. The Court has found that, on this issue, genuine issues of material fact preclude summary judgment in Szuba's favor. With respect to the second step of the inquiry, it is undisputed Bishop was molested by Lewis between August 1999 and January 2000. In 1992, the Tenth Circuit decided in *Yvonne L.* that foster children have a clearly established substantive due process right to "protection while in foster care." 959 F.2d at 892-93. *Yvonne L.* thus "clearly alerted persons in the positions of [Szuba] that children in the custody of a state had a constitutional right to be reasonably safe from harm; and that if the persons responsible place children in a foster home or institution that they know or suspect to be dangerous to the children they incur liability if the harm occurs." *Id.* at 893. "Indeed, the constitutional right of foster children to be kept reasonably safe from harm has been clearly established since at least 1985." *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (citations omitted). At the time of Bishop's placement in the Lewis home, reasonable OKDHS officials were on notice that failing to adequately investigate child abuse referrals

9

would be an abdication of their duty that would violate Bishop's substantive due process right to be reasonably safe from harm as a foster child. *See id*. at 588. As the Court has found genuine issues of material fact exist as to whether a constitutional violation occurred, it likewise finds Szuba is not entitled to qualified immunity and her Motion for Summary Judgment is denied on this issue as well.

## CONCLUSION

Defendant Robyn Singleton Szuba's Motion for Summary Judgment [Doc. No. 141] is **DENIED** as set forth herein.

**IT IS SO ORDERED** this 12th day of May 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE